IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) <br> ) <br> ) Case: 1:19-mc-00079 <br> ) Assigned To : Cooper, Christopher R. <br> ) Assign. Date : 5/24/2019 <br> ) Description: MISC. <br> ) <br> ) <br> ) |
| v. | |
| MUSTAFA MUHAMMAD MUFTAH AL-IMAM, | |
| Defendant. | |

### NON-PARTY DAVID KIRKPATRICK'S MOTION TO QUASH SUBPOENA

On or about May 20, 2019, Defendant Mustafa Muhammad Muftah Al-Imam ("Mr. Al-Imam") purported to serve David Kirkpatrick ("Mr. Kirkpatrick"), a reporter for *The New York Times* ("*NYT*"), with a subpoena to testify (the "Subpoena") in Mr. Al-Imam's ongoing trial. For the reasons that follow, Mr. Kirkpatrick respectfully moves this Court to quash the Subpoena.

### I.   FACTUAL BACKGROUND

Mr. Kirkpatrick is a reporter for *NYT* based in the newspaper's London bureau. He has conducted extensive investigative reporting from Libya, Egypt, Yemen, Saudi Arabia, and elsewhere, and he served as the newspaper's Cairo bureau chief from 2011-2015. In February 2019, he was detained at the Cairo airport and refused entry into Egypt.

On or around May 15, 2019, Mr. Al-Imam purported to serve Mr. Kirkpatrick with a subpoena to testify at a deposition in a criminal case. (Attachment 1.) He subsequently withdrew the deposition subpoena and, on May 20, purported to re-serve Mr. Kirkpatrick, this time with the Subpoena. (Attachment 2.) No order from this Court accompanied either subpoena. However, in two conversations with undersigned counsel on May 21, 2019, counsel for Mr. Al-Imam represented that such an order had been obtained from the Court under seal and

RECEIVED
MAY 24 2019
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

*ex parte*. Counsel for Mr. Al-Imam refused to provide undersigned counsel with a copy of any such order on the grounds that it had been issued under seal. Counsel for Mr. Al-Imam further represented that the Court's order related to a particular passage from an article authored by Mr. Kirkpatrick and published by *NYT*.

On or about December 28, 2013, *NYT* published the article at issue, titled "A Deadly Mix in Benghazi." (Attachment 3.) In "Chapter 6" of the article, Mr. Kirkpatrick writes: "Mr. Bargathi and Mr. Bin Hamid offered alibis for him, contradicting many witnesses. Mr. Bargathi said that he had received a call from Mr. Abu Khattala after the attack had begun and that Mr. Abu Khattala had seemed surprised by the news. Told that Mr. Abu Khattala had given his name as a corroborating witness, Mr. Bin Hamid said they had stood together outside the compound because it seemed too dangerous to enter."

In a conversation with undersigned counsel on May 21, 2019, counsel for Mr. Al-Imam represented that Mr. Al-Imam had subpoenaed Mr. Kirkpatrick in order for Mr. Kirkpatrick to testify, in substance, that he wrote "A Deadly Mix in Benghazi" and that the two witnesses identified in the passage above -- Mr. Bargathi and Mr. Bin Hamid -- told Mr. Kirkpatrick what the article says they told him. Counsel for Mr. Al-Imam further represented that the Court's order relates only to the passage in the article about Mr. Bargathi's statement and not to the passage about Mr. Bin Hamid's statement.

## II.   LEGAL STANDARD

Because Mr. Kirkpatrick resides in the United Kingdom, the Subpoena must comply with 28 U.S.C. § 1783. *See* Fed. R. Crim. P. 17(e)(2) ("If the witness is in a foreign country, 28 U.S.C. § 1783 governs the subpoena's service.").

Section 1783 provides in relevant part as follows:

> (a) A court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it . . . of a national or resident of the United States who is in a foreign country . . . *if the court finds that particular testimony . . . by him is necessary in the interest of justice* . . . .
>
> (b) . . . . The person serving the subpoena shall tender to the person to whom the subpoena is addressed his estimated necessary travel and attendance expenses, the amount of which shall be determined by the court and stated *in the order directing the issuance of the subpoena.*

28 U.S.C. § 1783 (emphases added). The plain language of the statute makes clear that for a subpoena to be valid under Section 1783 the Court must make a finding that "particular testimony" is "necessary in the interest of justice," and courts have interpreted this language to require a court order authorizing the subpoena. *See, e.g., United States v. Brennerman*, 2017 WL 4513563 at *2 (S.D.N.Y. Sept. 1, 2017) ("[T]he issuance of a § 1783 subpoena is appropriate only upon a judicial order."); *Johnson v. Bay Area Rapid Transit Dist.*, 2014 WL 2514542, at *2 (N.D. Cal. June 4, 2014) ("Whether to issue a subpoena under [28 U.S.C. § 1783] is left to the sound discretion of the Court.").

Pursuant to Rule 17, this Court may quash or modify the Subpoena if "compliance would be unreasonable or oppressive." *See* Fed. R. Crim. 17(c).[1]

## III. ARGUMENT

First, this Court should quash the Subpoena because compliance would be unreasonable and oppressive under the circumstances. Second, to the extent that Mr. Al-Imam has not

---

[1] Although Rule 17(c) technically relates only to document subpoenas, courts apply the same standard to motions to quash a trial subpoena. *See, e.g., Stern v. U.S. Dist. Court for Dist. of Mass.*, 214 F.3d 4, 17 (1st Cir. 2000).

3

obtained an order from this Court finding that Mr. Kirkpatrick's testimony would be "necessary in the interest of justice," the Subpoena is invalid.[2]

### A. The Subpoena Should Be Quashed Because Compliance Would Be Unreasonable and Oppressive

There are several reasons why forcing Mr. Kirkpatrick to testify in this case would be unreasonable and oppressive. First, forcing Mr. Kirkpatrick to testify could endanger him and potentially his sources and associates. Mr. Kirkpatrick has conducted extensive reporting from Libya, Egypt, Yemen, Saudi Arabia, and other volatile locations around the world, and his reporting routinely puts him in harm's way. Earlier this year he was detained at the airport in Cairo and denied entry into Egypt. It is one thing for Mr. Kirkpatrick to be associated with the articles he writes; that is the nature of his work as an investigative reporter. But for Mr. Kirkpatrick to appear in court and testify in support of, or against, a particular criminal defendant would tie him much more directly to the eventual verdict. Under the circumstances, and given the extreme dangers connected with reporting from Libya, Yemen, and elsewhere, a close association between Mr. Kirkpatrick and the eventual verdict in this case could place him and his sources and associates in substantial danger.

Second, forcing Mr. Kirkpatrick to testify could have a substantial chilling effect on his sources and therefore impede his ability to conduct the kind of invaluable reporting that led to the publication of "A Deadly Mix in Benghazi." *See In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1168 (Tatel, J., concurring) ("If litigants and investigators could easily discover journalists' sources, the press's truth-seeking function would be severely impaired."); *Riley v.*

---

[2] If, however, this Court has issued an order directing the issuance of the Subpoena, then the Court should partially unseal such order so that Mr. Kirkpatrick can understand the basis upon which the Subpoena has been issued.

4

*City of Chester*, 612 F.2d 708, 714 (3d Cir. 1979) ("A journalist's inability to protect the confidentiality of sources s/he must use will jeopardize the journalist's ability to obtain information on a confidential basis. This in turn will seriously erode the essential role played by the press in the dissemination of information . . . to the public."). It requires tremendous effort to earn the trust of confidential and non-confidential sources, and that trust could be substantially eroded by compelling Mr. Kirkpatrick to testify in this case.

Third, Mr. Kirkpatrick's testimony would be of limited evidentiary value and is potentially inadmissible. The statement relating to Mr. Bin Hamid is classic hearsay, and we are aware of no exception to the hearsay rule that would permit the statement to be admitted. The statement relating to Mr. Bargathi would also be hearsay if offered for its truth. Counsel for Mr. Al-Imam has indicated to undersigned counsel that he would seek to introduce the statement for impeachment purposes only. Nevertheless, we believe that under the circumstances the non-quoted statement relating to Mr. Bargathi would be of limited evidentiary value.

Fourth and finally, Mr. Kirkpatrick resides in the United Kingdom and has various professional and personal commitments in the United Kingdom next week that would make traveling to Washington, D.C. to give testimony in this case unreasonable and overly burdensome under the circumstances.

B.   The Subpoena Is Invalid if Mr. Al-Imam Has Not Obtained a Court Order

The Federal Rules of Criminal Procedure provide that service of a criminal subpoena on a witness located in a foreign country must comply with 28 U.S.C. § 1783. *See* Fed. R. Crim. P. 17(e)(2). Section 1783 could not be clearer: a court may order a subpoena to be served on a U.S. national in a foreign country if it "finds that particular testimony . . . by him is necessary in the interest of justice." 28 U.S.C. § 1783(a); *see also id.* § 1783(b) (amount of estimated travel expenses "shall be determined by the court and stated in the order directing the issuance of the

5

subpoena"). Courts have interpreted this language to mean what it says: that a subpoena for trial testimony served upon someone abroad must be authorized by court order. *See Brennerman*, 2017 WL 4513563 at *2; *Johnson*, 2014 WL 2514542, at *2.

Counsel for Mr. Al-Imam represented to undersigned counsel that he had procured an order from this Court. However, he refused to provide undersigned counsel with a copy on the grounds that the order had been obtained under seal. If no order exists finding that Mr. Kirkpatrick's testimony is "necessary in the interest of justice," then Mr. Kirkpatrick respectfully submits that the Subpoena is invalid. If, however, such an order does exist, then we respectfully request that the Court partially unseal it so that Mr. Kirkpatrick may evaluate the grounds on which the Subpoena was issued.

### IV. CONCLUSION

For the foregoing reasons, Mr. Kirkpatrick respectfully requests that this Court quash the Subpoena or, if circumstances warrant, partially unseal any order directing its issuance.

Dated: May 24, 2019

Respectfully Submitted,

Kurt A. Wimmer (*pro hac vice* application pending)
    D.C. Bar No.: 435759
Daniel Suleiman (*pro hac vice* application pending)
    D.C. Bar No.: 495975
Rebecca I. Yergin
    D.C. Bar No.: 888314685
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001
Tel: (202) 662-6000
Fax: (202) 778-6000

*Counsel for David Kirkpatrick and The New York Times*

## CERTIFICATE OF SERVICE

I, Rebecca I. Yergin, hereby certify that on the 24th day of May, 2019, a true and correct copy of the foregoing was served via email and FedEx Priority Overnight delivery to the following:

Matthew J. Peed
Clinton & Peed
777 Sixth St. N.W., 11th Floor
Washington, DC 20001
matt@clintonpeed.com

Jessie K. Liu
United States Attorney
John Cummings
Karen Seifert
Assistant United States Attorneys
National Security Section
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
jessie.liu@usdoj.gov
john.cummings@usdoj.gov
karen.seifert@usdoj.gov

_____
Rebecca I. Yergin (D.C. Bar No. 888314685)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel: (202) 662-6000
Fax: (202) 778-6000

*Counsel for David Kirkpatrick and The New York Times*